### THE STATE v. J. T. GAMMA, Appellant.

**Division Two, December 15, 1908.**

1. **APPELLATE JURISDICTION: Constitutional Question: When Raised: Motion in Arrest.** A constitutional question, in order to give the Supreme Court jurisdiction of the appeal, should be lodged in the case at the earliest possible moment that good pleading and orderly procedure will permit. If it could have been raised in the pleadings or in the instructions and preserved in the motion for a new trial, it is too late to raise it in the motion in arrest. The motion in arrest is aimed only at some error on the face of the record which invalidates the pleadings, or is of such character that a judgment should not be rendered.

2. ————: ————: ————: ————: **Local Option Law.** The constitutionality of the Local Option Law cannot be so invoked in a motion in arrest as to give the Supreme Court jurisdiction over an appeal from a judgment adjudging defendant guilty of its violation in a county where it had been adopted and assessing his punishment at a fine of three hundred dollars.

Appeal from Madison Circuit Court.—*Hon. Chas. A. Killian,* Judge.

Transferred to St. Louis Court of Appeals.

*David M. Tesreau* and *John H. Chitwood* for appellant.

*Herbert S. Hadley,* Attorney-General, and *Frank Blake,* Assistant Attorney-General, for the State.

BURGESS, J.—On March 23, 1908, the prosecuting attorney of Madison county filed an information in the circuit court of said county against the defendant, charging him with selling to George Gahring one pint of "Meth," a beverage containing alcohol, upon the 19th day of September, 1907, the Local Option Law having previously been adopted in said county. Defendant filed a motion to quash the information, one of the grounds therefor being that on the first day of October, 1907, the grand jury of said county returned and filed in said court an indictment charging him with the same offense, and that the same was still pending and undisposed of. In support of his motion, the defendant offered record evidence of the indictment against him for the same offense charged in the information. The motion to quash was overruled; whereupon the defendant filed a motion or special plea denying the adoption of the Local Option Law by said county, which motion the court ordered stricken from the files, upon motion made by the prosecuting attorney. The trial resulted in the defendant's conviction, his punishment being assessed at a fine of three hundred dollars. Defendant's motions for a new trial and in arrest of judgment were overruled, and an appeal to this court granted him, he having invoked the Constitution in his motion in arrest.

The evidence, in substance, was as follows:

J. M. White, clerk of the county court of Madison county, exhibited record book "I," of Madison county, wherein was recorded the order for and result of the Local Option election held in said county upon March 8, 1904, and all proceedings taken in connection there-

with. The record showed that at said election 825 votes were cast in favor of the adoption of the Local Option Law, and 820 votes against it.

George J. Gahring testified that the defendant had a little store on the Mine LaMotte road in said county; that he, in company with Dick DeGuire, went to said store on September 19, 1907, and that he ordered and paid for a bottle of "Meth" for DeGuire, and a bottle of soda water for himself.

Dick DeGuire testified that he went with Gahring to defendant's store on September 19, 1907, and ordered a bottle of "Meth," and drank part of it. The bottle containing the beverage was something like a beer bottle in shape. He did not feel any intoxicating effects from the little that he drank.

Emmett Williams, prosecuting attorney, testified that he had had a conversation with the defendant in the summer of 1907, and told him to quit selling "Meth," for the reason that it contained alcohol. The defendant replied that it contained less than two per cent alcohol, but promised the prosecuting attorney that he would quit selling it. In the summer of 1907, Williams had the defendant's place raided, when a large quantity of "Meth" was secured. It was packed in cases like beer cases. Some of the bottles of "Meth" secured at the time were exhibited at the trial and identified by the witness. These were labeled, "Meth, a non-intoxicant, pure malt liquor, containing less than two per cent alcohol. The William J. Lemp Brewing Company, St. Louis, U. S. A." Witness also testified that he purchased some bottles of "Meth" from the defendant, who told him that he got it from the Lemp Brewing Company.

H. E. Weidemann, a St. Louis chemist, testified that he analyzed several samples of "Meth" sent him by Mr. Williams about the 17th of September, 1907; that from the contents of bottle No. 1, exhibited at

the trial, he got a result of 1.85 per cent alchohol; from bottle No. 2, 5 per cent alcohol, and from No. 3, 5.05 per cent alcohol. The prosecuting attorney, being recalled, testified that bottle No. 3 came from the defendant's ice box on August 30, 1907; that bottle No. 2 was taken from a barrel outside the defendant's ice box on the same date, and that bottle No. 1 was, on said date, purchased by him from the defendant.

Ode Whitener, a clerk in the employ of the St. Louis, Iron Mountain & Southern Ry. Co., at Fredericktown, testified that from June to September, 1907, the defendant received at the depot many shipments from the Klausmann Brewing Company, billed as bottled beer.

Another witness testified that he had purchased "Meth" from the defendant during the year ending March 23, 1908, and that he had heard that the defendant could not keep enough on ice to supply the demand. Witness had seen people drink it there, and he had seen people around the defendant's place who seemed to be intoxicated, but he did not know whether they got intoxicated on that beverage or not.

It appeared from the evidence that at the September term, 1907, of the circuit court of Madison county, under an information filed by the prosecuting attorney, the defendant was convicted of the offense of selling "Meth" to Emmett Williams. The information in that case was filed September 27, 1907, and alleged that the offense was committed on August 30, 1907.

The first question which confronts us is whether this court has jurisdiction of this appeal. If it has, it is because a constitutional question is involved, as the offense charged is a misdemeanor, of which this court has no jurisdiction.

No mention is made of the Constitution in any of the instructions either given or refused, nor is there in the motion for a new trial—the only means by which the point could have been preserved even if it had

previously been raised. It is attempted to be raised for the first time in the motion in arrest. In the case of Lohmeyer v. St. Louis Cordage Co., 214 Mo. l. c. 689, it is said: "A constitutional question might possibly obtrude itself at the trial, regardless of the pleadings, through some unanticipated ruling on the introduction of testimony, when such question was squarely and with due precision made on objection and exception saved. If raised in that way in an appropriate case, and if the trial court had a chance to correct its error under an appropriate ground in the motion for a new trial, the point would be saved on appeal. So a constitutional question might be preserved on appeal in rare cases by a clause in the motion for a new trial when it did not appear elsewhere in the record. An example of that kind of case would be where the court had given some instruction directly, or by necessary implication, for the first time involving the Constitution—for instance, permitting nine jurors out of twelve to render a verdict. [Logan v. Field, 192 Mo. l. c. 66.] In such case, or cases of a kindred nature, the first door open for a constitutional question to enter would be in the motion for a new trial. Appellant could raise it no sooner, and nowhere else. But it must be taken as settled law that in so grave a matter as a constitutional question it should be lodged in the case at the earliest moment that good pleading and orderly procedure will admit under the circumstances of the given case, otherwise it will be waived. [Barber Asphalt Co. v. Ridge, 169 Mo. l. c. 387, et seq.]"

In the case at bar, the constitutional question might have been raised in or by the instructions and preserved in the motion for a new trial. Such motion only goes to matters of exception which occur during the trial of the suit, while the motion in arrest is only aimed at some error upon the face of the record

which invalidates the pleadings, or is of such character that a judgment should not be rendered. "It can only be maintained for a defect apparent on the face of the record, and the evidence is no part of the record for this purpose." [Bond v. Dustin, 112 U. S. 604; Carter v. Bennett, 15 How. 354; Sparks v. State, 59 Ala. 82; Van Stone v. Mfg. Co., 142 U. S. 128; Sawyer v. Boston, 144 Mass. 470; 2 Elliott's General Practice, sec. 996.]

While there are but few pleadings in this case, there is no reason apparent to us why the constitutional question could not have been properly raised and preserved as indicated. As it was not thus done, it must be considered as having been waived.

Having no jurisdiction of the appeal, the record should be transferred to the St. Louis Court of Appeals. It is so ordered.

All concur.