STATE of Missouri, Respondent,

v.

Paul SMITH, Appellant.

No. 46171.

Supreme Court of Missouri, Division No. 2.

March 10, 1958.

Cecil Block, Merle L. Silverstein, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Winston Cook, Asst. Atty. Gen., for respondent.

BOHLING, Commissioner.

Paut Smith has appealed from a judgment imposing a sentence of life imprisonment for the murder in the first degree of Lee Bunch. Will W. Blakley, David Hill, Jr. and appellant were jointly charged in an information substituted for an indictment with the offense. Sup.Ct. Rule 24.02 (§§ 545.290, 545.300. Statutory references are to RSMo 1949 and V.A.M.S.) The charge laid against appellant was under the habitual criminal act. § 556.280. Appellant was granted a severance. Appellant complains of the submissibility of the State's case, the admission in evidence of his confession, an instruction given by the court, and the argument of the State's attorney.

Between 5:30 and 5:50 a. m. June 18, 1855, Lee Bunch, a white man, was found in the neighborhood of 5123 Enright street, St. Louis City, Missouri, lying with his feet in the gutter of the street and his body in the space between the sidewalk and the curb. He was found by James Osler. Officers Edward Papin, Patrick McCord, and George Pate of the Metropolitan Police Department were soon on the scene. Their testimony established the following:

The man, later identified as Lee Bunch, was on his right side but rolled over on his back. He was unconscious, dirty, and was bloody about the head. His clothes were disarranged, dirty and soiled. His trousers were open at the fly and were down a couple of inches from the belt line. His pockets were inside out. Found near his body were two knives, two cigarette lighters, some keys, an electrician's pliers etc., which Mrs. Lee Bunch identified as her husband's property. She testified his billfold and money clip were not at the home, and they were not found. Bunch was taken to City Hospital No. 1. An excerpt from the hospital record under "Impression." "5. Acute alcoholic intoxication," was read into

evidence by appellant. Mrs. Bunch testified that, after her husband left their home June 17, 1955, she next saw him in the City Hospital; that he was unconscious and later was taken to the City morgue.

Dr. John J. Connor, Chief Pathologist for the coroner's office, performed a postmortem upon the body of Lee Bunch about 11:00 a. m., June 20, 1955. He testified, without detailing it, that Bunch sustained numerous contusions of the scalp, a laceration down to the skull in the left occipital region; that his death was the result of a fracture, a break, of the skull and the hemorrhagic softening of the brain, the result of trauma; that this condition could have been caused by a blow with a hard object, or by a fall caused by being struck with a fist, or a fall and striking something with a corner on it like a curbing, street, or an uneven surface.

Defendant was arrested at his home about 5:30 a. m. June 20, 1955. David Hill was arrested June 21, 1955, and Will W. Blakley on June 23, 1955. Officer Fred Grimes was assigned to the case and conducted the questioning of appellant. On the afternoon of June 23, 1955, after Hill and Blakley told of the robbery in appellant's presence, appellant made an oral statement to the officers. Appellant was then taken to the circuit attorney's office about 3:00 p. m. where a statement by him, in question and answer form, was taken by a stenographer. The stenographer was not able to finish the typing that afternoon. Appellant, after reading his typewritten statement and making several corrections in it, signed it at 10:40 a. m. June 24, 1955, with officers Grimes and Spencer as witnesses. The jury could find the following facts from his statement:

David Hill and appellant went to Jack Miller's tavern, 907 Academy, at approximately 11:45 p. m. July 17, 1955. A white man, Lee Bunch, came in, had several beers, made a telephone call, and went into the lounging parlor. Hill went in and talk-

ed to Bunch. Hill told appellant Bunch was looking for some prostitutes and he thought Bunch had a "nice size roll" on him. Hill went back to where Bunch was, and the two walked out of the tavern. Appellant walked out of the tavern, and Hill called to him, using a "phony" name. They told appellant Bunch was looking for a prostitute. After some conversation the three went to the 5100 block on Enright. Will Blakley came up while they were on Enright and asked: " 'What you all got— a trick,' " meaning a man they could rob, and appellant said: " 'Yeah.' " They walked down to in front of 5123 or 5125 Enright, and Bunch asked how much the girls would cost. Appellant told him $7; $2 for the room and $5 for the girl. Bunch said "I can't pay that much." This upset appellant because he thought Bunch had a big roll and he struck Bunch with his fist on the side of the head, and Bunch staggered back. Appellant "thought maybe I had fractured my arm." Hill or Blakley or both then "flopped" Bunch to the ground. Appellant and Blakley searched Bunch. Blakley found Bunch's billfold with $5 in it. They left Bunch lying there. Blakley had the bill changed, gave Hill and appellant $1.50 each and kept $2. Sunday morning, the 19th, Blakley told appellant: " 'The fellow died.' "

■ I. Appellant contends the court erred in refusing his motion for judgment of acquittal (Sup.Ct.R. 26.10) "since all of the evidence introduced by the State failed as a matter of law to prove beyond a reasonable doubt that defendant committed or participated in the homicide, the State's entire case being founded on an inference which is based on another inference, neither inference being proven by direct evidence." He stresses State v. Simon, Mo., 57 S.W.2d 1062 [2, 3], and cites State v. Ross, Mo., 300 S.W. 717 [2, 3]; State v. Taylor, 356 Mo. 1216, 205 S.W.2d 734, 736 [1–5]; and State v. Knight, Mo., 296 S.W. 367 [1–4].

Section 559.010 provides, among other things, that " * * * every homicide which shall be committed in the perpetration or attempt to perpetrate any * * * robbery * * * shall be deemed murder in the first degree." It is well settled that a prosecution for first degree murder in the perpetration of any of the felonies enumerated in § 559.010 may be maintained under a charge in the usual and common form, as in the instant case, of a willful, deliberate and premeditated killing. State v. Copeland, 335 Mo. 140, 71 S.W.2d 746, 752 [9]; State v. King, 342 Mo. 1067, 119 S.W.2d 322, 324 [1, 2], among others.

■ The instant case is distinguishable in that in appellant's authorities supporting his contention there was no substantial probative evidence showing that the respective defendant participated in or was connected with the crime charged; that is, in the Simon case with carrying concealed a deadly weapon, in the Ross case with manufacturing moonshine corn whiskey, and in the Knight case with selling hootch, moonshine and corn whiskey.

In the instant case the jury could find that Blakley, Hill and appellant conspired to rob Bunch; that in the execution of the robbery they made an assault upon Bunch with force and violence, consisting of blows to the head and "flopping" him to the ground, causing him to become unconscious, to bleed about the head, his skull to be fractured, and his brain to hemorrhage and soften; that they thereupon robbed Bunch and departed leaving him lying in front of 5123 or 5125 Enright, and that Bunch was there found unconscious about 5:30 that morning, and died without regaining consciousness.

The evidence in the instant case is not as direct as in the Taylor case, supra, cited by appellant, sustaining a conviction, but it established appellant's participation in the assault and robbery and is more substantial than the evidence held to be sufficient in

State v. Ellis, 294 Mo. 269, 242 S.W. 952, 954 [1], 24 A.L.R. 682. See also State v. Frazier, 339 Mo. 966, 98 S.W.2d 707, 712 [5]; State v. Brinkley, 354 Mo. 1051, 193 S.W.2d 49, 54 [4-8]; State v. Rizor, 353 Mo. 368, 182 S.W.2d 525, 528 [7, 8]. The corpus delicti—the death of Bunch and the criminal agency of someone causing his death—and appellant's participation were established.

II. Appellant, in his brief, complains of the State's argument in two instances, to-wit:

"Mr. McMillian: * * * You have this also to think about—what about this man's prior convictions? He knows all about penitentiaries, he has been there, he confessed that he was up there for almost two years, and less than forty days on the street, where was he—he is still out trying to steal and taking another man's life.

"Mr. Draper: I will object to that as an attempt to influence the jury and I will ask that it be stricken and a mistrial be declared and the jury be discharged.

"The Court: Overruled." And later:

" * * * He has been in the penitentiary, and it wasn't but forty days after he came out before he was back in trouble again, and considering all the evidence, why, this man should continue to live when Lee Bunch is dead? He left this life—he didn't even have a chance to make peace with his Maker—

"Mr. Draper: (interrupting) I will object to that, that is highly prejudicial and outside the scope of the record.

"The Court: Sustained.

"Mr. Draper: I will ask that the jury be discharged and a mistrial be declared.

"The Court: That will be overruled."

The only assignment in appellant's motion for new trial complying with Supreme Court Rule 27.20 (§ 547.030) against the State's argument alleged error in the refusal of "defendant's request for the discharge of the jury and the declaration of a mistrial" because the State's argument "went completely outside the scope of the evidence and charged the defendant with being a thief and a rapist." The ground alleged for this error in appellant's brief is that these "remarks were not warranted or permissible since the habitual criminal act issues were not submitted to the jury."

The information charged, the State proved, and appellant testified that he had been convicted of statutory rape and of grand larceny, sentenced to and imprisoned in the penitentiary and thereafter discharged upon compliance with the sentence. § 556.-280. This refutes the statement in the motion for new trial that the remarks were outside the scope of the evidence.

 The different assignments for error in appellant's motion for new trial and in his brief make it apparent that appellant's objection that the State's argument was "an attempt to influence the jury" did not specifically direct the trial court's attention to either of said grounds. State v. Allison, Mo., 300 S.W. 1069, 1071 [8]; State v. McKeever, 339 Mo. 1066, 101 S.W. 2d 22, 32 [29]. Grounds assigned for error upon appeal are not available unless properly presented to the trial court. State v. Witherspoon, 231 Mo. 706, 720, 133 S.W. 323, 327 [13]; (State v. Smith, Mo., 261 S.W.2d 50, 57 [10]; State v. Davis, Mo., 251 S.W.2d 610, 616 [5, 6]. The issue presented in appellant's brief was not properly raised and preserved for review.

The court submitted to the jury murder in the first degree (§ 559.010), punishable by life imprisonment or death (§ 559.030); murder in the second degree (§ 559.020), punishable by imprisonment not less than ten years (§ 559.030); and manslaughter (§ 559.070), punishable by a jail sentence and/or fine or imprisonment of not more than ten years (§ 559.140).

Over the protest of the State's attorney the court did not instruct on the habitual criminal act with reference to the submitted offenses of murder in the second de-

gree and manslaughter, the possible reason being that the punishment for murder in the first degree was life imprisonment or death and the habitual criminal act was not applicable. In State v. Spencer, 355 Mo. 65, 72 [10, 11], 195 S.W.2d 99, 103 [12–16], instructions submitting murder in the first degree, second degree and manslaughter and instructions covering punishments under the habitual criminal act, the punishment for murder in the first degree being fixed at death or life imprisonment, were considered not erroneous. See also State v. Krebs, 336 Mo. 576, 580 [2], 80 S.W.2d 196, 198 [2]. In the instant case appellant was found guilty of murder in the first degree and his punishment was assessed at life imprisonment, the minimum, and we are unable to conclude that prejudicial error resulted from the questioned argument of the State's attorney. State v. Spencer, supra, 195 S.W.2d 104 [14].

■ III. Appellant complains in his brief of the giving of instruction No. VI, but, as pointed out by the State, did not question said instruction in his motion for new trial. The issue is not preserved for review. Sup.Ct.R. 27.20 (§ 547.030); State v. Boyd, Mo., 256 S.W.2d 765 [3]; State v. Wilson, 361 Mo. 78, 233 S.W.2d 686 [12]; State v. Barbata, 336 Mo. 362, 80 S.W.2d 865 [9, 11].

IV. Appellant, invoking the provisions of Supreme Court Rule 21.14 (§ 544.170), providing that all persons held in custody, without warrant, "shall be discharged from such custody within twenty hours from the time of arrest," makes the point in his brief that the court "erred in admitting into evidence the oral and written confessions of defendant," obtained "after illegally detaining defendant for nearly three days, because the exacting of a confession in this manner violated the due process clause of the Fourteenth Amendment" of the Federal constitution.

· The point is not well taken for several reasons.

Officer Grimes first narrated the oral confession of appellant. No objection was interposed and there is no assignment of error in appellant's motion for new trial covering his oral confession.

Officer Grimes next identified State's exhibit E, appellant's written confession, which the State's attorney requested him to read into evidence to the court and jury. At this point appellant's counsel objected on the ground "that no corpus delicti has been established." (The corpus delicti— the death of Bunch and the criminal agency of someone causing his death—had been established. The issue remaining for consideration was appellant's criminal agency. State v. Meidle, Mo., 202 S.W.2d 79, 80 [5]; State v. Lawson, 360 Mo. 95, 227 S.W.2d 642, 643 [1, 2].) Appellant's objection was overruled. Thereupon, at the direction of the court, the officer read said exhibit E to the court and jury.

When the State's attorney offered the State's exhibits in evidence near the close of the State's case, appellant's counsel objected to exhibit E, asked that the jury be instructed to disregard it and a mistrial declared on the grounds "this statement was taken after the defendant was in custody for 40 hours, and no charge having been placed against him; there is nothing in the statement to indicate that he was advised of his right to counsel, or that he had an opportunity to read the statement and examine the statement himself prior to his signing it." The objection and request were overruled.

■ Appellant's objections to the evidence and assignments in his motion for new trial do not specifically mention the "due process clause" of the Fourteenth Amendment of the Federal constitution. This issue is first presented in his brief here. This prosecution is under the law of this State. Constitutional questions must be raised at the earliest opportunity consistent with orderly procedure. State v. Lock, 302 Mo. 400, 259 S.W. 116, 125

[11]; State v. Cox, Mo., 259 S.W. 1041 [2]; State v. Egan, Mo.App., 272 S.W.2d 719, 723 [3]. They must be kept alive throughout the case by proper objection (State v. Merchant, Mo., 119 S.W.2d 303, 304; State v. Hepperman, 349 Mo. 681, 162 S.W.2d 878, 887; State v. Nordseick, Mo.App., 295 S.W. 808, 810 [4]; State v. Egan, supra [4, 5]), the same as objections to testimony on other grounds (State v. Gaddy, Mo., 261 S.W.2d 65, 68 [10]). They also must be properly preserved in the motion for new trial. Sup.Ct.R. 27.20 (§ 547.030); State v. Powers, 350 Mo. 942, 169 S.W.2d 377, 378; State v. Williams, 337 Mo. 987, 87 S.W.2d 423 [2, 3]; State v. Medley, 360 Mo. 1032, 232 S.W.2d 519, 523 [1]; State v. Egan, supra. Reasons first stated in appellant's brief are of no avail. State v. Gibson, Mo., 300 S.W. 1106 [5, 6]; State v. Hampton, Mo., 275 S.W.2d 356, 359 [8]. See Stembridge v. State of Georgia, 343 U.S. 541, 547, 72 S.Ct. 834, 96 L.Ed. 1130. This constitutional issue with respect to the oral or the written confession of appellant is not. for consideration here.

■■ Whether a confession is involuntary, the result of some physical or mental ordeal, is a fact issue. State v. Sanford, 354 Mo. 1006, 193 S.W.2d 37, 38 [1, 2]. Appellant's brief concedes our rulings are that the people are not to be deprived of a voluntary confession of crime on the ground that the confession becomes involuntary as a matter of law when obtained after the accused has been held, without warrant, beyond the twenty-hour period. State v. Ellis, 354 Mo. 998, 193 S.W.2d 31, 37; State v. Sanford, supra; (certiorari denied in the Ellis and Sanford cases, 328 U.S. 873, 66 S.Ct. 1373, 1374, 90 L.Ed. 1642); State v. Higdon, 356 Mo. 1058, 204 S.W.2d 754, 756; State v. Francies, Mo., 295 S.W.2d 8, 12 [9]; State v. Raftery, 252 Mo. 72, 80(II), 158 S.W. 585, 587 [3].

Appellant makes no claim that any other provision of Sup.Ct.R. 21.14 was overstepped. The State's evidence established that they were not violated; that appellant was offered no violence or threats of violence or inducements to make his statements, and that he was advised he did not have to make a statement and what he said could be used against him. The officers questioned him, as we read the record, on seven occasions for durations ranging from ten or fifteen minutes to forty-five minutes between June 20 and 23, 1955, prior to his statement. They would check the information appellant gave them to verify it and then question him again. After they arrested David Hill and Will W. Blakley and obtained statements from them, they had Hill and Blakley confront appellant with their statements and permitted appellant to read their written statements. Appellant then stated he would make a statement, made his oral statement and, later, signed his written statement, Exhibit E. This is not the situation shown in the Ellis and Sanford cases, supra, upholding convictions, or that existing in appellant's cited cases. Fikes v. State of Alabama, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246; Watts v. State of Indiana, 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801; Turner v. Commonwealth of Pennsylvania, 338 U.S. 62, 69 S.Ct. 1352, 93 L.Ed. 1810, or Harris v. State of South Carolina, 338 U.S. 68, 69 S.Ct. 1354, 93 L.Ed. 1815. See State v. Bradford, 362 Mo. 226, 240 S.W.2d 930, 933.

Our examination of matters under Sup. Ct.R. 28.02 discloses no reversible error.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

STORCKMAN, P. J., EAGER, J., and HUNTER, Special Judge, concur.

LEEDY, J., not sitting.